UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:15-CV-00101-JHM

BANKRUPTCY TRUSTEE, RUSS WILKEY            PLAINTIFF

V.

MANAGEMENT & TRAINING CORPORATION          DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Management & Training Corporation ("MTC") Motion for Summary Judgment [DN 39]. Fully briefed, this matter is ripe for decision.

### I. BACKGROUND

Jeffrey James, the original Plaintiff in this action, was employed at the Earle C. Clements Job Center ("ECC") in Madisonville, Kentucky, from 2003 to 2014. At the time of his termination in April of 2014, James was employed as the Community Living Director at the ECC. Although the United States Department of Labor ("DOL") administers the program, it contracts with private corporations to actually operate the facility. In 2008, the DOL contracted with Defendant, Management & Training Corporation ("MTC"), to take-over operations of the facility.

In November of 2008, MTC hired James to work as the Center Standards Manager, a position he previously held under the ECC's previous contractor. Defendant later promoted James to Residential Manager, and then on July 23, 2012, to Community Living Director. In the position, he reported to Deputy Director of Administration, Marvin Marteen and thereafter, in the summer of 2013, to Amanda Curry. As Community Living Director, he was responsible for the management of residential living and recreation.

On April 16, 2014, the Defendant terminated James. The reasons listed for termination included his failure to meet the expectations of a 60-day Performance Improvement Plan ("PIP") and James' failure to enforce time card and overtime requirements. Specifically, the Notice of Caution provided in part:

> Deputy Director Amanda Curry instructed you in an email dated December 12, 2013 that this was not the directive to be followed and to cease and desist from this process immediately. Despite this instruction, Residential employees still continued to turn in their timecards in advance and failed to report their correct hours. When asked why this practice continued you stated you did not know why. In one dorm the timecards were being turned in two weeks in advance and had only recently stopped this practice after a training was conducted by human resources. You are aware of a senior RA working from home and did nothing to stop it. You said you spoke to him but he continued to do so and you took no further action. Over 40% of the residential staff have issues with their timecards. This is unacceptable to have such a large portion of your staff with issues which you did not correct or follow up.
> Mr. James, your lack of oversight for the Residential Department led to issues with student accountability, communication, dorm consistency, staff training and attendance and dormitory planning. As Community Living Director, it is your responsibility to ensure that your department is operating legally and ethically. Due to your lack of leadership and involvement in your departmental process, we are terminating your employment with MTC/Earle C. Clements Job Corps Academy effective immediately.

(Notice of Caution, DN 39-6 at 58.)

On July 17, 2015, James filed this action in the Union Circuit Court alleging retaliation in violation of the Kentucky Civil Rights Act ("KCRA"). James alleges that he was actually retaliated against because of deposition testimony he gave on May 30, 2013, in a racial discrimination action between James Cole and Defendant. See Cole v. Management & Training Corp., No. 4:11CV-118-JHM. James contends that because he supported Cole's allegations of racial discrimination, he was targeted and harassed by Jeff Barton, the Director of the ECC, and later terminated. James asserts that after his deposition, he was called into Barton's office and chastised about petty matters. Then, for the first time in 11 years, James was placed on a PIP and

eventually terminated. On August 5, 2015, Defendant removed the action to this Court. On January 18, 2017, the Court substituted Russ Wilkey, trustee of James' bankruptcy estate, as the Plaintiff in this action. On May 1, 2017, Defendant filed this motion for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## III. DISCUSSION

Plaintiff asserts that Defendant terminated James in retaliation for testifying in another employee's discrimination lawsuit against Defendant, in violation of the KCRA, KRS §344.280(1). Under KRS § 344.280, it is unlawful "for a person, or for two (2) or more persons to conspire: (1) [t]o retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under [the KCRA]." KRS § 344.280(1). Retaliation claims under the KCRA are evaluated under the same standard used to evaluate federal Title VII claims. Montell v. Diversified Clinical Servs., Inc., 757 F.3d 497, 504 (6th Cir. 2014). When a plaintiff presents only circumstantial evidence, as in this case, retaliation claims are examined under the McDonnell Douglas evidentiary framework. Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 544 (6th Cir. 2008).

The plaintiff has the initial burden under McDonnell Douglas to establish a prima facie case of Title VII retaliation by showing: (1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to the defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment. Russell v. University of Toledo, 537 F.3d 596, 609 (6th Cir. 2008) (quoting Morris v. Oldham Cnty. Fiscal Ct., 201 F.3d 784, 792 (6th Cir. 2000)). The burden of establishing a prima facie case is not an onerous one. See Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000).

If the plaintiff makes the prima facie case, "[t]he burden then shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for its actions." Imwalle, 515 F.3d at 544. If the defendant articulates such a reason, "the plaintiff must prove not only that the defendant's proffered reason was a pretext, but that the real reason for the employer's action was intentional retaliation." Id.

The parties do not dispute that James engaged in a protected activity; that Defendant knew of the protected activity; and Defendant took an adverse employment action against James when it terminated his employment. Defendant contends Plaintiff has failed to establish there was a causal connection between the protected activity and the adverse employment action. Further, Defendant argues that even if Plaintiff was able to establish a prima facie case, it has produced legitimate, non-discriminatory reasons for James' termination, and Plaintiff is unable to establish that those reasons were pretext for intentional retaliation.

### A. Causal Connection

Defendant asserts that Plaintiff has failed to establish a causal connection between his termination and any alleged protected activity. To establish the causal connection required in the fourth prong, the plaintiff must produce sufficient evidence "from which an inference could be drawn that the adverse action would not have been taken had" James not engaged in protected activity. Nguyen, 229 F.3d at 563; Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2528, 2533 (2013).

### 1. Temporal Proximity

Plaintiff argues that the temporal proximity between James' deposition testimony in the discrimination lawsuit on May 30, 2013, and his subsequent harassment and ultimate termination on April 16, 2014, permit the inference that the adverse action would not have been taken had

5

James not testified in the discrimination lawsuit. In determining whether there is a causal relationship between a plaintiff's protected activity and an allegedly retaliatory act, substantial case law from the Sixth Circuit cautions about the permissibility of drawing an inference of causation from temporal proximity alone. See Vereecke v. Huron Valley Sch. Dist., 609 F.3d 392, 400 (6th Cir. 2010) (collecting cases). However, the Sixth Circuit has accepted temporal proximity as a valid basis from which to draw an inference of retaliatory motivation under limited circumstances. See Mickey v. Zeidler Tool and Die Co., 516 F.3d 516, 524–25 (6th Cir. 2008). Specifically, the more time that elapses between the protected activity and the adverse employment action, the more the plaintiff must supplement his claim with "other evidence of retaliatory conduct to establish causality." Id.

Here, Plaintiff relies principally upon the timing of James' PIP and subsequent termination, which occurred nine to 11 months after James' protected activity. This timing, without more, does not raise the inference that the adverse action would not have been taken had James not engaged in the alleged protected activity. See Cooper v. City of North Olmsted, 795 F.2d 1265, 1272 (6th Cir. 1986) ("The mere fact that Cooper was discharged four months after filing a discrimination claim is insufficient to support an [inference] of retaliation."). Plaintiff contends that the harassment he was subjected to by Jeff Barton, the Director of the ECC, satisfies the "other evidence of retaliatory conduct" necessary to establish causality.

Specifically, James alleges in his complaint that after he gave the deposition, he began being called into Barton's office and chastised about petty matters. When questioned at his deposition regarding what he recalled as the subject matter of the chastisements, James stated that he got called in for "several little things at first" and "[t]hen all of a sudden one week it was . . . four different things with the fraternization, the time cards," a kid accused James of almost

hitting him with his vehicle, and James' request for use of a piece of equipment. (James Dep. at 165-166.) James further testified that "[t]here are just so many times that I was called in there for stupid stuff, I can't remember all of it." (Id. at 165.) Barton confirmed that he called James in at least twice about the fraternization issue. (Barton Dep. at 34.) Similarly, Curry testified that prior to the issuance of the PIP, she met with him numerous times regarding his leadership, the expectations within the department, and what needed to be changed. Curry testified that Barton was present at several of those meetings. (Curry Dep. at 46-47.) James avers that Barton's harassment, coupled with the fact that he was placed on a Performance Improvement Plan by Curry nine months after the protected activity and eventually terminated, supports an inference that his deposition testimony in the race discrimination lawsuit resulted in the adverse employment action.

None of the other pre-PIP and pre-termination incidents that Plaintiff has described constitutes adverse employment actions. An "adverse employment action" is one that "affect[s] employment or alter[s] the conditions of the workplace." Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 61 (2006). Generally, it involves changes in the terms of employment, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," and usually "inflicts direct economic harm." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761-762 (1998); White v. Baxter Healthcare Corp., 533 F.3d 381, 402 (6th Cir. 2008). See also Hashemian v. Louisville Reg'l Airport Auth., 2013 WL 1788473, at *8 (W.D. Ky. Apr. 26, 2013). James testified that he was not written up for any of these items at the time of the meetings with Barton; and he received no change in pay or a demotion as a result of the meetings with Barton.

Furthermore, James conceded at his deposition that he fraternized with his subordinates and that there were issues with time cards in his department. These are the only two issues identified by James as the subject of "harassment" or "chastisement" by Barton that are arguably related to the deficiencies contained in the PIP and his subsequent discharge. Given that James admits that issues regarding fraternization and time cards existed, it is difficult for the Court to classify the meetings with Barton regarding these issues as retaliatory. Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has not presented "other evidence of retaliatory conduct to establish causality." Mickey, 516 F.3d at 524–25.

**2. Treated Differently**

Plaintiff argues that James was treated differently than other employees thereby establishing the causal connection requirement of the prima facie case. The Sixth Circuit has explained that, "[i]n determining whether there is a causal relationship between a plaintiff's protected activity and an allegedly retaliatory act, courts may consider whether the employer treated the plaintiff differently from similarly situated individuals . . . ." Barrett v. Whirlpool Corp., 556 F.3d 502, 516–17 (6th Cir. 2009). "In order for . . . employees to be considered similarly-situated . . . the plaintiff must prove that all of the relevant aspects of his employment situation are 'nearly identical' to those of the [non-protected] employees who he alleges were treated more favorably." Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994). See also Knox v. Neaton Auto Prods. Mfg., Inc., 375 F.3d 451, 458 (6th Cir. 2004). In making this determination, courts assess certain factors, such as whether the comparable employees "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." MacDonald–Bass v.

J.E. Johnson Contracting, Inc., 493 Fed. Appx. 718, 724 (6th Cir. 2012)(quoting Noble v. Brinker Int'l, Inc., 391 F.3d 715, 729 (6th Cir. 2004) (citation omitted)). The Sixth Circuit recognizes that these factors listed above are not rigid requirements, but "are only apposite where they are meaningful to the particular claim of discrimination presented." Bobo v. United Parcel Service, Inc., 665 F.3d 741, 751 (6th Cir. 2012).

Here, James testified that he was treated differently than other employees in relation to both the time card issue and fraternization issue. James argues that the time card issue had been a problem for a long time throughout the ECC, and yet he was targeted. James contends that he had proposed writing up Residential Manager Deria Antia for time card infractions on her campus, but that Barton disagreed. Contrary to Plaintiff's argument, the co-worker to which James compares himself has similarities in some respects, but not in "all of the relevant aspects." Antia and James were not similarly situated in terms of their jobs. Anita was a Residential Manager, whereas James was the Community Living Director and Antia's direct supervisor. Furthermore, contrary to Defendant's argument, the record reflects that after the completion of the time card investigation, all three Residential Managers, including Antia, were issued a notice of caution for their conduct with respect to time cards.

Plaintiff also argues that differential treatment is also evident with regard to the "fraternization" allegations. Specifically, Plaintiff argues that while the complaints regarded the fraternization of James, Residential Living Manager Dave Wasilewski, and Residential Living Manager Cliff Miller, James was the only one subject to discipline. Contrary to Plaintiff's argument, Wasilewski and Miller are not similarly situated to James. As noted above, they are Residential Managers, and James is the Community Living Director and their direct supervisor.

Additionally, there is no evidence in the record that Wasilewski and Miller were not counseled about fraternization and then continued to engage in the fraternization after being warned.

As Plaintiff has not cited sufficient evidence of a causal link between the alleged protected activity and the adverse employment action, the Court finds that Plaintiff has not presented a prima facie case of retaliation.

### B. Pretext

Assuming arguendo that Plaintiff could make out a prima facie retaliation claim, Defendant has articulated a "legitimate, nondiscriminatory reason for its action." Imwalle, 515 F.3d at 544. Defendants terminated James for "neglect of duty or refusal to perform work assigned" and violation of company or facility rules, policies, the employee handbook, or federal, state and local laws. (April 16, 2014, Notice of Caution, DN 50-1 at 11.)

To establish pretext, a plaintiff must show that the proffered reason (1) had no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to motivate that action. Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir.1994) (overruled on other grounds, Geiger v. Tower Automotive, 579 F.3d 614 (6th Cir. 2009)). In an effort to establish pretext, Plaintiff argues that Defendant's reasons for terminating James are nothing more than pretext because the fraternization and time card issues did not actually motivate Defendant's action and were not used to discharge other employees. Specifically, in addition to the reasons articulated above, Plaintiff also points to the interviews of ECC employees with Jody Trujillo, the Corporate Human Resource Director, indicating that some employees had concerns about the "recent leadership and favoritism investigation conducted by human resources, " including disagreements about whom Defendant should be investigating. (Curry Dep. at 80-81.) Plaintiff argues that these interviews demonstrate that

James was being targeted by Defendant and that the reasons articulated by Defendant did not actually motivate James' discharge.

The Court disagrees. First, the fact that the time card issue had been a long standing problem does not prohibit disciplinary action based upon James' failure of leadership with respect to that issue. James admitted that there were issues with time cards in his department. James was the director over all the residential living facilities and was ultimately responsible for training his staff in the proper manner in which to fill out the time cards. While he was terminated for that and other issues, all three Residential Managers received a Notice of Caution related to the time card issue. Second, while the record does not clearly reflect that James was terminated for his fraternization with subordinates, James does not dispute that he fraternized with his subordinates while the Community Living Director.

Finally, "[t]he law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with." Hartsel v. Keys, 87 F.3d 795, 801 (6th Cir. 1996). Thus, although some employees at the ECC might disagree with the decision of MTC to investigate James and others, this disagreement does not provide any factual support for James' retaliation claim. Similarly, while Plaintiff is certainly entitled to disagree with the Defendant's issuance of the PIP, the progress reports from the PIP, and his ultimate termination, Plaintiff has failed to present any evidence that Defendant did not have a reasonable basis for concluding that James failed to comply with the requirements of the PIP or enforce time card directives and laws.

Defendant has shown that the motivation for terminating James' employment was his continuing pattern of poor work performance and management of his department, including time card issues. James' poor work performance persisted even after Defendant's issuance of the PIP

and subsequent PIP follow-up meetings. Plaintiff has not shown that Defendant's proffered explanations are a mere pretext for discrimination.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant, Management & Training Corporation, for summary judgment [DN 39] is **GRANTED**. A Judgment will be entered consistent with this Opinion.

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: counsel of record

August 4, 2017